# 23-7146-cr

# United States Court of Appeals

*for the*

## Second Circuit

UNITED STATES OF AMERICA,

*Appellee,*

– v. –

MIRSAD KANDIC,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR DEFENDANT-APPELLANT

BENJAMIN SILVERMAN
LAW OFFICE OF BENJAMIN SILVERMAN
224 West 30th Street, Suite 302
New York, New York 10001
(212) 203-8074

*Attorney for Defendant-Appellant*

CP COUNSEL PRESS    (800) 4-APPEAL • (334752)

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES…………………………..………………...……ii

I.      Count One was impermissibly duplicitous…………………………..…….3

II.     The government's arguments do not withstand scrutiny………………..…….6

CONCLUSION…………………………………………………………..…….11

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Brown v. Ohio*,
432 U.S. 161 (1977)................................................................................11

*Burrage v. United States*,
571 U.S. 204 (2014)................................................................................2

*United States v. Felder*,
593 F.3d 57 (2d Cir. 2021) .....................................................................2

*United States v. Sturdivant*,
244 F.3d 71 (2d Cir. 2001) ..................................................................6, 9

**Statutes & Other Authorities:**

18 U.S.C. § 1958(a) ................................................................................2

18 U.S.C. § 2113(e) ................................................................................2

18 U.S.C. § 2119(3) ................................................................................2

18 U.S.C. § 2339B ..................................................................................2

Fed. R. Crim. P. 8(a) ...............................................................................6

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**
--------------------------------------------------------------X

**UNITED STATES OF AMERICA,**

    **-**against-

                                **23-7146**

**MIRSAD KANDIC,**

    Defendant-Appellant,

-------------------------------------------------------------X

_____

APPEAL FROM FINAL JUDGMENT
OF THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
_____

REPL Y BRIEF FOR DEFENDANT-APPELLANT MIRSAD KANDIC
_____

Defendant-appellant Mirsad Kandic respectfully submits this reply brief to

address the government's argument that a single count charging numerous and

unspecified homicides is *permissibly* duplicitous. Count One charged conspiracy to

provide material support to a foreign terrorist organization known as Islamic State

of Iraq and the Levant (ISIS) resulting in death. A. 37. "Death results" elements are

federal statutes' felony murder rule: when added to a criminal statute, a "death

results" element imposes murder liability, without requiring murderous intent or

even foreseeability, if the offense is the but for cause of any death. *E.g.*, 18 U.S.C. §§ 1958(a) (murder for hire resulting in death), 2113(e) (bank robbery resulting in death), 2119(3) (carjacking resulting in death), 2339B (material support resulting in death); *see generally United States v. Felder*, 593 F.3d 57, 69-70 (2d Cir. 2021) (describing "death results" liability including absence of proximate cause requirement). When an indictment charges a "death results" offense, the government must prove both the actual death and the offense's but for causation of that death; but it does not need to prove intent to kill or even that the death was foreseeable. *Burrage v. United States*, 571 U.S. 204, 210 (2014) (stating elements for "death results" offense under The Controlled Substances Act; no intent to kill required); *Felder*, 593 F.3d at 69-71 (requiring mere "injurious intent" without foreseeability); *see also* DE 251 at 20-21 (government request to charge omitting any murderous intent element). A "death results" element raises the penalties for an offense and frequently makes it capital eligible. *E.g.*, 18 U.S.C. §§ 1958(a), 2113(e), 2119(3). When a "death results" element is added to a material support count, it raises the statutory maximum sentence from twenty year to life without parole. 18 U.S.C. § 2339B.

In this case, the government charged – in a single conspiracy count – an unspecified number of "deaths," meaning an unspecified number of homicides allegedly caused by Mirsad Kandic's conspiracy to provide material support to

2

ISIS. *See* A. 36 (Indictment); Main Br.[1] 38-46. The government no longer maintains, as it argued below, DE 273 at 3, that this was not a duplicitous count. It instead argues that the count's duplicity is permissible because the defendant was adequately notified about the charged murders – even though they are not listed in the Indictment and the record illustrates that the government declined before and during the trial to state which of innumerable ISIS deaths described in the evidence it would argue Mr. Kandic was charged in Count One. For the reasons below, the government's arguments do not withstand scrutiny.

## I.      Count One was impermissibly duplicitous.

The Indictment in this case contained two "death results" counts. There was a substantive material support count charged in Count Five that identified the single homicide victim whose death Mr. Kandic was charged with causing – it alleged specifically that the offense "resulted in the death of one or more persons, **to wit**: Jake Bilardi." A. 40 ¶ 14 (emphasis added). Then there was a conspiracy to provide material support count charged in Count One that alleged, in a vague and uninformative clause, that the conspiracy "resulted in the death of one or more

---

[1] "Main Br." and "G. Br." refer respectively to the appellant's brief filed on August 19, 2024 and the government's opposition filed on November 18, 2024. Numbers preceded by "A." refer to pages in the Appendix. "DE" refers to docket entries on the district court's docket sheet.

persons, **including** Jake Bilardi." A. 37-38 Indictment ¶ 6 (emphasis added). The conspiracy count did not identify the other homicide victims beyond Bilardi, nor did it provide any clue as to where or when the deaths occurred, leaving open that they could have been in any number of countries over a multi-year charged period.

The defense moved pretrial to dismiss the duplicitous conspiracy count. Main Br. 9-12. The government responded that the count was somehow not duplicitous, DE 273; and it declined to ameliorate the prejudice arising from the duplicity by providing a bill of particulars until *after evidence closed* at the end of the trial, Main Br. at 9-12; A. 486. The defense never claimed to be unaware of discovery or evidence reflecting deaths caused by ISIS – on the contrary, there was too much evidence of ISIS killings, and the defense wanted to know which of these hundreds of deaths depicted in the discovery the government sought to attribute to Mr. Kandic's conspiracy. The defense did not find out the answer until after the evidentiary portion of the trial was closed, meaning that throughout the trial counsel did not know which of the deaths illustrated in the evidence it had to dispute its client's responsibility for causing. Thus, the duplicity and resulting lack of notice as to the charged homicides effectively shifted the burden to the defense – throughout the trial – to try to disprove Mr. Kandic's responsibility for all the countless ISIS deaths shown to the jury in videos, social media posts, and other

4

evidence, and which included deaths that Mr. Kandic later found out he was not even charged with causing.

After defense rested, at the charging conference, the district court expressed concern that it could not draft a special verdict sheet because it could not list the deaths the government charged were caused as part of the conspiracy count. T. 1756-1757. That night, the government filed a letter finally specifying the deaths it had charged, without specifying, in the Indictment's conspiracy count:

- Jake Bilardi
- Iraqi military and police killed on March 11, 2015 in Anbar Province
- Family members of the Bosnia Witness
- Suspected spy at a safehouse in Idlib
- Bajro Ikanovic
- Abu Qaqa Al-Britani
- Persons that Bajro Ikanovic and his co-conspirators killed
- Persons that Jake Bilardi and his co-conspirators killed

A. 486.[2] The government's position on this appeal appears to be that Kandic's counsel could have prepared precisely that list – not one decedent more or less – based on the discovery materials. The government is mistaken.

---

[2] The government writes in its brief that it "volunteered" to provide this list. G. Br. at 69. The district court did not appear to see it that way: it expressed to the government that the defendant and the court both needed to know the deaths that the government claimed were charged within the conspiracy count, and admonished that the government's letter was "more than a courtesy" because it was necessary to properly instruct the jury and allow the defendant to prepare. T. 1755-1758.

The conspiracy count was "impermissibly duplicitous" because "it combine[d] two or more distinct crimes into one count in contravention of Fed. R. Crim. P. 8(a)'s requirement that there be a separate count for each offense,' and" Mr. Kandic was "prejudiced thereby" because he did not receive "adequate notice" about which murders he was charged with causing. *United States v. Sturdivant*, 244 F.3d 71, 75 (2d Cir. 2001) (quotation marks omitted).

## II.     The government's arguments do not withstand scrutiny.

This appeal focuses on whether Mr. Kandic received adequate notice as to what murders he was charged with in the conspiracy count, before the evidence closed at trial. The government now apparently concedes that the conspiracy count was duplicitous – meaning it charged more than one homicide in the same count. In fact, the conspiracy count did not even identify or cabin the charged homicides by date, time, location, victim, nor did it even state how many there allegedly were. *See* A. 37. The government argues that this was not a problem because Mr. Kandic still had adequate notice about each charged death, which the government argues were all reflected in the discovery. G. Br. 61-70. That argument addresses another kind of case, one where the defense claims it cannot even imagine that there is a homicide attributable to the defendant – "what murder could this man have caused?" – but it is not a meaningful response to the problem here where the

6

defense was on notice as to innumerable ISIS deaths and the government declined before and during the trial to identify which of these many deaths it sought to hold the defendant criminally responsible for causing.

The government's discussion of its voluminous discovery productions thus does not aid its argument but rather focuses on the problem that the duplicity caused: amidst the ocean of ISIS carnage depicted and described in the government's Rule 16 and § 3500 discovery productions, there was no way for Mr. Kandic to know which deaths the government charged him with causing. As the Main Brief explained, and as the government does not dispute, the evidence revealed far more ISIS murders and deaths than those select few that the government stated – after the evidence closed – it had charged Mr. Kandic with causing as part of Count One. Indeed, the government at trial showed evidence of over 800 ISIS propaganda videos disseminated by Mr. Kandic, and its trial evidence showed extensive video footage of assassinations, decapitations, and other killings. Main Br. 45. The discovery was inundated with evidence of death caused by ISIS. But the government does not explain how Mr. Kandic should have *identified* those deaths that he was charged with responsibility for causing.

The government argues that Kandic was on notice as to the murders encompassed in Count One because "some" of the deaths were specified in the "charging documents." G. Br. 61-62. Upon inspection, what it means is that *one* of

7

the deaths – that of the Australian suicide bomber Jake Bilardi – was identified in the Complaint and Indictment. *See id.* The government's argument actually underscores the problem: beyond this one person, the charging instruments provided no clues as to whose deaths Kandic's conspiracy offense was alleged to have caused, much less where or when.

The government correctly states that it provided discovery and § 3500 material "well in advance of trial" that disclosed deaths caused by ISIS. G. Br. 62. But § 3500 discovery materials – meaning "witness statements" – produced in federal criminal cases frequently describe crimes a defendant committed, or was reported to have committed, that are not charged; and the question here was how Mr. Kandic was supposed to know which of these innumerable ISIS deaths the government charged him with causing through the conspiracy count. The government does not answer that question in its brief, because it cannot. There is a difference between producing discovery of innumerable ISIS attacks and charging that a defendant is legally responsible for specific deaths from among those many.

The government argues that Mr. Kandic's counsel should have been guided by "the limiting principles inherent in the death-resulting element" that Mr. "Kandic could only be held responsible for deaths that resulted from his offense, not all deaths ever caused by ISIS." G. Br. 67. But this provides no explanation for

8

how Mr. Kandic or his counsel were supposed to discern which deaths the government charged as within these boundaries for criminal liability.

The government also highlights how central the death results issue was to the case, noting that at trial, Kandic, who conceded that he provided material support to ISIS, "focused entirely on the death-resulting element of the charged." G. Br. 66. But the government is mistaken when it argues that the there was no harm to Kandic from the duplicity because "Kandic's defense theory was that none of the deaths that had occurred were by his own hand, so he could not be held responsible for any of them." *Id.* What the government fails to appreciate is that Mr. Kandic's defense theory had to be a strained one to address the fact that his counsel did not even know for which particular deaths he was being put on trial.

The government speculates that reducing the number of counts through duplicity "may have benefitted" Mr. Kandic (G. Br. 67); but that conjecture is no more helpful than speculating that the government charged the way it did because it did not have enough evidence to take certain deaths to the grand jury standing on their own. In any event, this argument does not address the harm caused by the conspiracy count's duplicity, which is what makes the charge impermissible under *Sturdivant*.

The government also tries to dismiss the district court's discussion, during the charging conference, about its inability to draft a verdict sheet and defense

9

counsel's related inability to prepare for summation because it was not clear, after a month-long trial, which deaths the government sought to argue were charged in Count One. T. 1756-1757. As we noted in the Main Brief, the district court had denied our pretrial motion to dismiss on duplicity grounds because it accepted at face value the government's argument that the charged deaths were clear from the discovery. Main Br. 11-12. But after the parties rested, at the charging conference, the district court realized it could not write a special verdict sheet because it did not, even by then, after the full trial evidence was presented, know which of the innumerable deaths the government thought Mr. Kandic's conspiracy was responsible for causing. T. 1757. This was an implicit recognition by the district court that the factual basis for its pretrial ruling was mistaken, even if the district court did not realize it was making that point. *See* Main Br. 9-12. The government states that our description is "not faithful to the record." G. Br. 68. But that aspersion does not even attempt to address how the district court's views as expressed at the charging conference had come to change from what it had written when it denied the pretrial motion to dismiss.

Finally, the government argues that the duplicity in this case did not pose a "danger of prejudice in connection with double jeopardy rights" because "Count One provides a broad double jeopardy bar, as it cover the entire time Kandic conspired to provide material support to ISIS, all forms of material support he

10

provided, and all the deaths that resulted from it." G. Br. 71. If this statement is correct, then each of the four substantive material support counts of conviction – including Count Five, which was a substantive count charging death results as to one of the deaths encompassed in Count One – should be dismissed as multiplicitous. The Double Jeopardy Clause is violated if a defendant is doubly punished for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165 (1977). And the government here appears to be saying that the sentences separately imposed on the four substantive material support counts are all "cover[ed]" by Count One for Double Jeopardy purposes. G. Br. 71. If that is true, the substantive counts must all be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should vacate the conviction of Count One and remand with instructions to dismiss the count.

Dated: New York, New York
     December 9, 2024                 Respectfully submitted,

                             /s/ Benjamin Silverman   .
                             Benjamin Silverman
                             Law Office of Benjamin Silverman
                             224 West 30th St., Suite 302
                             New York, NY 10001

**CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure, the foregoing brief is in 14-Point Times New Roman proportional font and contains 2,441 words, inclusive of footnotes, and thus is in compliance with the type-volume limitation set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure.

 /s/Benjamin Silverman        _
BENJAMIN SILVERMAN