23-7146-cr
*United States v. Kandic*

# United States Court of Appeals for the Second Circuit

August Term 2024
Argued: January 24, 2025
Decided: April 11, 2025

No. 23-7146-cr

UNITED STATES OF AMERICA,

*Appellee*,

*v.*

MIRSAD KANDIC,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of New York
No. 1:17-cr-449-1, Nicholas G. Garaufis, *Judge*.

Before:       CHIN, PÉREZ, and NATHAN, *Circuit Judge*s.

1

Defendant-Appellant Mirsad Kandic appeals from a judgment of the United States District Court for the Eastern District of New York (Garaufis, *J.*) convicting him, after a jury trial, of providing material support to a foreign terrorist organization; providing material support to a foreign terrorist organization resulting in death; and conspiring to provide material support to a foreign terrorist organization resulting in death. On appeal, Kandic argues that the conspiracy count should be dismissed as impermissibly duplicitous, the remaining counts should be dismissed as multiplicitous, and the district court abused its discretion by excluding certain evidence at trial. We conclude that none of Kandic's challenges prevail. Accordingly, we **AFFIRM** the judgment of the district court.

―――――

> SARITHA KOMATIREDDY (Amy Busa, *on the brief*), Assistant United States Attorneys, *for* John J. Durham, United States Attorney for the Eastern District of New York, Brooklyn, NY, *for Appellee*.
>
> BENJAMIN SILVERMAN, Law Office of Benjamin Silverman, New York, NY, *for Defendant-Appellant*.

―――――

NATHAN, *Circuit Judge*:

Defendant-Appellant Mirsad Kandic spent years working for the Islamic State of Iraq and al-Sham (ISIS)[1] as a recruiter, financier, arms dealer, foreign fighter, cross-border smuggler, and online propagandist. Following a jury trial in the United States District Court for the Eastern District of New York (Garaufis, *J.*), Kandic was convicted of four counts of providing material support to a foreign terrorist organization, one count of providing material support to a foreign terrorist organization resulting in death, and one count of conspiracy to provide material support to a foreign terrorist organization resulting in death, all in violation of 18 U.S.C. § 2339B. For these crimes, the district court sentenced him to two terms of life imprisonment, as well as four concurrent terms of 20 years' imprisonment.

On appeal, Kandic argues that the conspiracy count must be vacated as impermissibly duplicitous; the remaining counts must be vacated as multiplicitous; and the district court abused its discretion by excluding certain hearsay evidence during trial. We reject these arguments and **AFFIRM** the judgment of the district court.

---

[1] ISIS, which is designated by the United States as a foreign terrorist organization under 8 U.S.C. § 1189(a)(1), is also known as the "Islamic State of Iraq and Syria," the "Islamic State of Iraq and the Levant," and simply the Islamic State. *See United States v. Ceasar*, 10 F.4th 66, 68 & n.1, 70 (2d Cir. 2021).

## BACKGROUND

### I. Factual Background

In 2013, Mirsad Kandic—a legal permanent resident of the United States—relocated from New York to Syria to serve as a foreign fighter for ISIS. ISIS leadership later directed him to Turkey, where he became a prolific recruiter and emir for ISIS media. In this role, Kandic used more than 120 social media accounts to spread ISIS propaganda and assist recruits in traveling to ISIS-controlled territory, including by picking recruits up from the airport, arranging their stay at local safehouses, and coordinating their travel into ISIS-controlled territory. As a high-level member of the organization, he ran an online weapons market, providing firearms and explosives to ISIS fighters, and he smuggled over $40,000 into Syria for ISIS's benefit. He also obtained and created false passports to help ISIS fighters cross borders undetected, and he provided key intelligence information to ISIS leadership, distributing maps used by ISIS fighters and tracking territorial control and road closures.

In 2014, Kandic recruited an Australian teenager named Jake Bilardi to join ISIS. After Bilardi contacted one of his social media accounts, Kandic helped him fly to Istanbul, gave advice on what to bring and what not to bring, promised that an AK-47 would be free when he got to ISIS territory, arranged him to be picked up from the airport, and provided instructions on how to meet his ride. He then helped Bilardi travel to Syria and encouraged him to become a suicide bomber. On March 11, 2015, Bilardi participated in a highly coordinated attack that involved eleven suicide bombers throughout Iraq's Al-Anbar province. In total, over 30 people were killed in these

attacks, including Bilardi.

During this time, Kandic's work for ISIS involved other deaths. For example, Kandic helped a man—known by his alias "Jason Borne"—join an ISIS sniper training facility in Syria. On one occasion, Kandic and Borne suspected that another individual was a spy trying to reveal the location of an ISIS safehouse. The two men repeatedly questioned the suspected spy and beat him, resulting in his death.

In 2017, after living for several months in Sarajevo, Kandic was arrested by Bosnian immigration authorities. Following extradition proceedings, he was transported to the Eastern District of New York.

## II.   Procedural Background

A grand jury returned an indictment charging Kandic with six counts. Count One charged him with conspiracy to provide material support to ISIS in the form of property, services, and personnel, in violation of 18 U.S.C. § 2339B. He was also charged with five substantive violations of 18 U.S.C. § 2339B, including providing material support to ISIS in the forms of: personnel (himself and others) (Count Two); services (Count Three); property and equipment (Count Four); personnel (specifically, Jake Bilardi) (Count Five); and false documentation and identification (Count Six). Counts One and Five each included a "death results" element, requiring the government to prove that "the offense resulted in the death of one or more persons." App'x at 38, 41.

Kandic pled not guilty. Before trial, he moved to dismiss Count One. Although defense counsel conceded that Count Five was "clear that the only persons whose death the government blames on Mr. Kandic is Jake Bilardi," he argued that Count One improperly "le[ft]

5

open the possibility that Mr. Kandic can be held responsible for other, unnamed persons' deaths." Dkt. No. 272 at 2; *see also* Fed. R. Crim. P. 12(b)(3)(B)(i) (allowing a pretrial motion for "a defect in the indictment," including "joining two or more offenses in the same count (duplicity)"). The district court denied Kandic's motion, concluding that any prejudicial unfairness could be cured through a tailored jury instruction.

A three-week trial was held in May 2022. At the charge conference on May 19, 2022, defense counsel requested that the government "identify the deaths" relevant to Count One, either by naming the individuals or "point[ing] to specific episodes or specific incidents." App'x at 479. In response, the government agreed to produce a letter specifying which deaths "we are going to ask the jury to focus on in our summation . . . that resulted from this conspiracy." App'x at 480. Later that day, the government submitted a letter listing three named individuals (including Jake Bilardi), one unnamed individual (the suspected spy who died at the safehouse), and four groups (including the Iraqis killed in Bilardi's suicide attack).

After summations, the jury was instructed with respect to the "death results" element. The court stated: "[I]n order to find the government has proven that the commission of the offense resulted in a death, . . . you must be unanimous as to the person's death that you are considering." App'x at 538 ("It is not enough for some of you to find that the government has proven one person's death and another of you to find that the government has proven a different person's death. In other words, if you find that a death resulted, you must all agree as to that specific death.").

6

The jury found Kandic guilty on each of the six counts. It also returned a special verdict sheet, unanimously finding both that the conspiracy offense "resulted in the death of Jake Bilardi" and that it "resulted in the death of any other person or persons." App'x at 545.

In 2023, the district court sentenced Kandic to two terms of life imprisonment on Counts One and Five, along with 20 years' imprisonment on Counts Two, Three, Four, and Six, to run concurrently.

This appeal followed.

## DISCUSSION

Kandic raises three challenges to his conviction. He argues that (1) the conspiracy count must be vacated as impermissibly duplicitous because it failed to identify every death for which the government sought to hold him responsible; (2) the remaining counts must be vacated as multiplicitous because they impose multiple punishments for the same offense; and (3) the district court abused its discretion by excluding certain evidence at trial.

"We review properly preserved challenges to an indictment de novo," including whether an indictment is duplicitous or multiplicitous. *United States v. Daugerdas*, 837 F.3d 212, 225 (2d Cir. 2016); *see also United States v. Mejia*, 545 F.3d 179, 204 (2d Cir. 2008). "We review a district court's evidentiary rulings under a deferential abuse of discretion standard, and we will disturb an evidentiary ruling only where the decision to admit or exclude evidence was manifestly erroneous." *United States v. McGinn*, 787 F.3d 116, 127 (2d Cir. 2015) (quotation marks omitted).

7

### I. Impermissible Duplicity

In general, "two or more distinct crimes should not be alleged in a single count of an indictment." *United States v. Murray*, 618 F.2d 892, 896 (2d Cir. 1980). An indictment that violates this prohibition is said to be "duplicitous." *Id.*; *see also United States v. Sturdivant*, 244 F.3d 71, 75 n.3 (2d Cir. 2001). But not all duplicitous indictments are *impermissibly* duplicitous.

"[A] single count of an indictment should not be found impermissibly duplicitous whenever it contains several allegations that could have been stated as separate offenses[.]" *United States v. Margiotta*, 646 F.2d 729, 733 (2d Cir. 1981). Instead, "[a]n indictment is impermissibly duplicitous where: 1) it combines two or more distinct crimes into one count in contravention of [the] requirement that there be a separate count for each offense, and 2) the defendant is prejudiced thereby." *Sturdivant*, 244 F.3d at 75 (quotation marks omitted). To determine "whether a defendant was actually prejudiced by a duplicitous indictment," *id.*, we look to whether the duplicitous count "risks unfairness to the defendant," *Margiotta*, 646 F.2d at 733, in three respects.[2]

---

[2] This Court has previously broken down impermissible duplicity into five "underlying policy concerns: (1) avoiding uncertainty of general guilty verdict by concealing finding of guilty as to one crime and not guilty as to other, (2) avoiding risk that jurors may not have been unanimous as to any one of the crimes charged, (3) assuring defendant adequate notice of charged crimes, (4) providing basis for appropriate sentencing, and (5) providing adequate protection against double jeopardy in subsequent prosecution." *United States v. Olmeda*, 461 F.3d 271, 281 (2d Cir. 2006). We think these policy concerns can be grouped into three broader categories: unanimity, double jeopardy, and adequate notice. *See Sturdivant*, 244 F.3d at 77–78.

8

First, a duplicitous indictment creates prejudice if it deprives a defendant of his "right to a unanimous verdict." *Murray*, 618 F.2d at 898. If, for example, a guilty verdict does "not reveal whether the jury found [a] defendant guilty of only one crime and not the other, or guilty of both," *id.* at 896, the duplicitous count "risk[s] that the jurors may not have been unanimous as to any one of the crimes charged." *Margiotta*, 646 F.2d at 733. This, of course, raises Sixth Amendment concerns. *See Ramos v. Louisiana*, 590 U.S. 83, 92 (2020). It also impermissibly undermines "the basis for appropriate sentencing." *Margiotta*, 646 F.2d at 733; *see also Sturdivant*, 244 F.3d at 77 ("To the extent that the court sentenced defendant on the assumption that he was convicted for conduct for which the jury may not have reached a unanimous verdict, such sentence constitutes plain error[.]").

Second, an indictment is impermissibly duplicitous if it implicates the Double Jeopardy Clause of the Constitution. *See* U.S. Const., amend. V. "Under this Clause, once a defendant is placed in jeopardy for an offense, and jeopardy terminates with respect to that offense, the defendant may neither be tried nor punished a second time for the same offense." *United States v. Olmeda*, 461 F.3d 271, 278–79 (2d Cir. 2006) (quotation marks omitted). "In the case of successive prosecutions, the critical inquiry is whether the [two] offenses are the same in fact and in law." *United States v. Basciano*, 599 F.3d 184, 196 (2d Cir. 2010) (quotation marks omitted). Our bar on impermissible duplicity helps effectuate this requirement, providing "protection against double jeopardy" where an indictment might otherwise create uncertainty about possible "subsequent prosecution[s]" as to the same conduct. *Murray*, 618 F.2d at 896.

9

Third, a defendant is prejudiced by a duplicitous indictment if it "implicate[s]" his "right[] to notice of the charge against him." *Id.* An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1).  It must also, broadly speaking, "inform[] the defendant of the charges he faces." *United States v. Doe*, 297 F.3d 76, 87 (2d Cir. 2002).  The purpose of this requirement is "to enable him to prepare a defense." *United States v. Hernandez*, 980 F.2d 868, 871 (2d Cir. 1992).  Accordingly, a duplicitous indictment becomes impermissibly duplicitous where it fails to "assur[e] the defendant adequate notice" of the charges that the government seeks to prove. *Margiotta*, 646 F.2d at 733.

Here, Count One charged Kandic with conspiring to provide material support that "resulted in the death of one or more persons, including Jake Bilardi." App'x at 38.  Kandic argues that the count must be vacated as impermissibly duplicitous because its "death results" element "create[d] an omnibus homicide count charging an unspecified number of homicides at unspecified times and places." Appellant's Br. at 44.  He asserts that, although any one death was sufficient to convict him, the language of Count One created a limitless set of *possible* resulting deaths.  And, because the indictment failed to identify any death other than Bilardi's, Kandic contends that he was forced to defend against an "ocean of carnage." Transcript of Oral Argument at 24:1–2.  For example, at trial the jury saw "extensive video footage of assassinations, decapitations, and other killings," but Kandic had "no way to determine which of these deaths the government sought to pin on [him]." Appellant's Br. at 45–46.  By not

10

identifying every death relevant to Count One, he argues, the government improperly "shifted the burden to the defense to try to demonstrate [his] lack of responsibility for each of the countless deaths the government discussed at the trial[.]" Appellant's Br. at 12.

We agree with the district court that Count One is duplicitous. It "combines two or more distinct crimes into one count," *Sturdivant*, 244 F.3d at 75, and each possible resulting death could have been separated into its own count. We must therefore examine if Kandic was prejudiced by the duplicitous indictment. *Id.*

To start, we reject Kandic's argument that the duplicitous count left room for a non-unanimous verdict. To the contrary, "any possibility" of a non-unanimous verdict was removed by the court's "careful charge regarding unanimity" and the special verdict sheet. *United States v. Helmsley*, 941 F.2d 71, 91 (2d Cir. 1991). The jurors were expressly instructed that if they found "that a death resulted, [they] must all agree as to that specific death." App'x at 538. And the special verdict sheet indicated that they must be unanimous in finding both that the conspiracy "resulted in the death of Jake Bilardi" and that it "resulted in the death of any other person or persons." App'x at 545. With respect to unanimity, this is enough to avoid prejudice.

Similarly, to the extent Kandic seeks to argue that Count One's duplicity creates a double jeopardy problem, we disagree. As the district court noted, the government conceded before trial that the conspiracy count provided "a broad double jeopardy bar," covering "the entire time span of the defendant's conspiracy to provide material support to ISIS, all of the forms of material support that he

11

provided, and all of the deaths that resulted." *United States v. Kandic*, No. 17-CR-449, 2022 WL 1406946, at *4 (E.D.N.Y. May 4, 2022). Moreover, "[p]rinciples of equity prohibit the government from benefitting from [a] prejudicial ambiguity that the government alone was responsible for creating." *Sturdivant*, 244 F.3d at 77. Because "the government is estopped from acting on any interpretation of the jury's verdict that would prejudice [Kandic's] double jeopardy rights," *id.* at 78, the conspiracy count cannot be vacated on this basis.

Even if a duplicitous indictment does not implicate unanimity or double jeopardy concerns, however, it may still be impermissible if it fails to "assur[e] the defendant adequate notice" of the charges against him, *Margiotta*, 646 F.2d at 733, thereby undermining his ability to prepare an adequate defense, *see Hernandez*, 980 F.2d at 871. In this case, the government chose to use a novel, omnibus conspiracy count that did not specify the set of possible resulting deaths. This is unusual. And we agree, as a general matter, that this practice puts at risk a defendant's ability to prepare for trial and mount an adequate defense. Indeed, the Federal Rules of Criminal Procedure allow courts to "direct the government to file a bill of particulars" to remedy this exact risk. Fed. R. Crim. P. 7(f); *see United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988) ("A bill [of particulars] is appropriate to permit a defendant to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial [and] to prevent surprise[.]" (quotation marks omitted)). Thus, if a statute provides for a "death results" element,[3]

---

[3] *See, e.g.*, 18 U.S.C. §§ 1958(a) (murder for hire), 2113(e) (bank robbery), 2119(3) (carjacking), 2339B (material support); 21 U.S.C. § 841 (narcotics distribution).

12

the government should ordinarily specify the set of possible resulting deaths, either in the indictment itself or in a subsequent bill of particulars. The failure to do so renders the indictment impermissibly duplicitous if inadequate notice results. *See Sturdivant*, 244 F.3d at 75.

But, here, we find that Count One's duplicity did not "actually prejudice[]" Kandic. *Id.* at 75.

First, as defense counsel conceded at oral argument, Kandic had adequate notice with respect to Bilardi: Count One expressly listed Bilardi as a possible resulting death, and the jury unanimously found that the conspiracy "resulted in the death of Jake Bilardi." This finding alone satisfies the statute's "death results" element. *See* 18 U.S.C. § 2339B(a)(1) (". . . if the death of *any person* results . . ." (emphasis added)).

Second, although the indictment did not identify other decedents, Kandic had notice as to the scope of the charged conspiracy. Count One was limited to the deaths resulting from Kandic's own "knowing[] and intentional[]" conspiracy to provide material support to ISIS. App'x at 37. And, as the district court noted, evidence adduced at trial did not include "an infinite number of incidents" but rather "some particularly well-documented" ones. App'x at 485. Importantly, Kandic does not now argue that there were any surprises at trial. Nor does he point to any alleged death of which he was unaware—or for which he was unable to prepare—in anticipation of trial. Kandic instead argues that "unquantifiable prejudice" resulted because, in the weeks leading up to trial, defense counsel "consum[ed] their time running down rabbit holes" to explore whether their client was involved in various deaths.

13

Transcript of Oral Argument at 4:9–16. But these deaths were disclosed months, if not years, before trial. And Kandic never sought a bill of particulars, *see* Fed. R. Crim. P. 7(f), or a continuance under 18 U.S.C. § 3161(h)(7)(A), *see United States v. Lynch*, 726 F.3d 346, 356 (2d Cir. 2013). We thus hold that Kandic, under these circumstances, had adequate notice of the charges against him.

In the absence of some of these factors, the government's failure to specify the specific resulting deaths in the indictment may have been prejudicial. Under the circumstances presented, however, we cannot conclude that Kandic was prejudiced by the duplicitous indictment.

## II.     Multiplicity

The multiplicity doctrine prevents the government from "charging the same offense in more than one count." Fed. R. Crim. P. 12(b)(3)(B)(ii).[4] Like duplicity, multiplicity is grounded in double jeopardy principles, assuring "that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." *United States v. Nakashian*, 820 F.2d 549, 552 (2d Cir. 1987) (quoting *Brown v. Ohio*, 432 U.S. 161, 165 (1977)). To determine if two counts are multiplicitous, courts analyze "whether the offenses charged in the various counts are sufficiently distinguishable from one another to permit a reasonable inference that Congress intended to authorize multiple punishments." *United States v. Maldonado-Rivera*, 922 F.2d 934, 969 (2d Cir. 1990).

---

[4] Multiplicity serves as a foil to duplicity, which is "joining two or more offenses in the same count." Fed. R. Crim. P. 12(b)(3)(B)(i).

14

In his appellate reply brief, Kandic argues for the first time that Counts Two, Three, Four, Five, and Six of the indictment should be dismissed as multiplicitous. He contends that the conspiracy charge, which encompasses the substantive violations charged by the remaining counts, renders those counts multiplicitous. Because Kandic did not bring a multiplicity argument before the district court, however, he has forfeited this argument on appeal. "We will not consider an argument raised for the first time in a reply brief." *United States v. Yousef*, 327 F.3d 56, 115 (2d Cir. 2003). Although he seeks to avoid this outcome by arguing that the government conceded that the counts are multiplicitous, we are unpersuaded. The government made no such concession. The language he argues constitutes a concession was first articulated by the government before trial, *see* Gov't App'x at 91, and yet Kandic nonetheless failed to make a multiplicity argument below. And, even if this argument were not forfeited, it is settled law that "the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses." *Pinkerton v. United States*, 328 U.S. 640 (1946). We have thus rejected similar multiplicity arguments because "there is certainly nothing unusual about treating as distinct crimes a conspiracy and the substantive offense that is its object." *United States v. DeStafano*, 429 F.2d 344, 348 (2d Cir. 1970).

### III. Evidentiary Challenge

Lastly, Kandic argues that Counts One and Five should be vacated because certain hearsay evidence was improperly excluded.

Hearsay is an "out-of-court statement[] offered to prove the truth of the matter asserted." *Smith v. Arizona*, 602 U.S. 779, 785 (2024)

15

(quotation marks omitted). In federal court, hearsay evidence is inadmissible unless it "falls within an enumerated exception" in the Federal Rules of Evidence. *United States v. Cummings*, 858 F.3d 763, 772 (2d Cir. 2017) (quotation marks omitted). One such exception is the residual hearsay exception, which is a catch-all to be invoked "very rarely, and only in exceptional circumstances." *Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907 (2d Cir. 1991) (quotation marks omitted).

Under the residual hearsay exception, a statement is not excluded by the rule against hearsay if:

> (1) the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.

Fed. R. Evid. 807(a).

At trial, Kandic sought to introduce affidavits by three of Jake Bilardi's siblings. The affidavits memorialize statements made by Bilardi's siblings to Australian authorities several months before his death, describing his apparent radicalization prior to meeting Kandic. Although Kandic endeavored to introduce the affidavits to support his argument that he was not responsible for Bilardi's death, the district court found that they were inadmissible hearsay statements

and not covered by any exception.

On appeal, Kandic argues that the district court abused its discretion by declining to admit the affidavits under the residual hearsay exception. We disagree. Even accepting Kandic's position that the affidavits are supported "by sufficient guarantees of trustworthiness," Fed. R. Evid. 807(a), he has not shown that they are "more probative," *id.*, than the substantial evidence admitted and developed during trial concerning Bilardi's radicalization. This evidence included an 18-minute telephone call between Bilardi and his brother about his radicalization and an extensive blog post written by Bilardi discussing the same. The government also authenticated and made available to the defense the entire contents of Bilardi's computer. The district court concluded, "the longer the trial goes on, and the more evidence [that] comes in, the clearer it becomes that the sibling affidavits are neither necessary nor the most probative evidence about Jake Bilardi's radicalization." App'x at 332. In so holding, the district court did not abuse its discretion.

## CONCLUSION

The judgment of the United States District Court for the Eastern District of New York is **AFFIRMED**.